UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
|    Plaintiff, | ) | |
| | ) | |
| v. | ) | No. S1-4:18-CR-00565 CDP (JMB) |
| | ) | |
| BRUCE EDWARD JOHNSON, | ) | |
| | ) | |
|    Defendant. | ) | |

**UNITED STATES' RESPONSE TO DEFENDANT'S MOTION FOR
RECONSIDERATION OF DETENTION ORDER AND REQUEST FOR TEMPORARY
RELEASE**

The United States of America, through undersigned counsel, respectfully opposes Defendant Bruce Edward Johnson's Motion for Reconsideration of Detention Order and Request for Temporary Release (Doc. #776) for the following reasons.

**Introduction**

Defendant seeks reconsideration of the Court's detention order, which imposed pretrial detention after Defendant's waiver. Defendant cites the fact that his parole was never revoked as the material change in circumstances that necessitates reconsideration.  However, Defendant completely ignores the fact that he has entered a plea of guilty as of February 3, 2020 to charges of Conspiracy to Distribute Fentanyl, in violation of Title 21, United States Code, Sections 846 and 841(a), and Felon in Possession of a Firearm, in violation of Title 18, United States Code, Section 922(g).  As the Government will be requesting imprisonment upon sentencing, no exceptions exist pursuant to Title 18, United States Code, Section 3143 that warrant Defendant's release. As such, the Government will only be addressing the Defendant's "changed circumstances" based on the COVID-19 virus.  Furthermore, Defendant advances concerns about

1

the spread of COVID-19 outside of the jail system to justify his immediate release on bond. Defendant has not identified any valid basis for this extraordinary relief. For instance, there is no evidence that any detainee at the St. Charles County jail has been exposed to COVID-19, and jail administrators have implemented proactive measures to prevent the transmission of the virus. Additionally, given that Defendant's concerns about COVID-19 could be invoked by any pretrial detainee, granting release here would cause a flood of similar requests at a time when the justice system is already under strain from the coronavirus outbreak. Accordingly, the Court should reject Defendant's efforts to unsettle its determination that pretrial detention is necessary in this case.

**Facts**

On or about June 28, 2018, the Defendant was indicted on charges of Conspiracy to Distribute over 400 grams of fentanyl, in violation of Title 21, United States Code, Sections 846 and 841(a). On or about July 18, 2018, the Defendant was arrested on the federal warrant and was found to be in possession of firearms at that time. As such, a Superseding Indictment was issued additionally charging him with being a felon in possession of a firearm, in violation of Title 18, United States Code, Section 922(g). On July 19, 2018, Pretrial Services issued a report in which they determined that the Defendant was both a flight risk and a danger to the community, and that the Defendant should be detained pending trial. A detention hearing was held on July 20, 2018, at which time the Defendant, present with counsel, executed a waiver of his right to a detention hearing and was ordered detained pending trial. (Doc. #107). On or about February 3, 2020, the Defendant entered pleas of guilty to the reduced charge of conspiracy to distribute fentanyl (with no mandatory minimum alleged) and felon in possession of a firearm. (Doc. #724). The defendant now awaits sentencing, which is scheduled for May 6, 2020.

The Bureau of Prisons ("BOP") has been preparing for a potential COVID-19 outbreak since January 2020 by developing best practices to mitigate transmission. *See* Federal Bureau of Prisons, *Federal Bureau of Prisons COVID-19 Action Plan*, https://www.bop.gov/resources/news/20200313_covid-19.jsp. Effective March 13, 2020, BOP required all of its facilities to implement a set of measures "to mitigate the spread of the COVID-19" and "to ensure the continued effective operation of the federal prison system." *Id.* These measures include: (1) prohibiting all social and volunteer visits; (2) restricting legal visits (with case-by-case exceptions); (3) suspending inmate facility transfers (with exceptions for medical treatment and other compelling reasons); (4) requiring staff health screening, including temperature checks; (5) implementing a variety of coronavirus-specific protocols for inmates, such as screening new inmates, quarantining asymptomatic inmates, and isolating and testing inmates with exposure risk factors (in addition to its routine infectious disease management program); and (6) modifying operations to maximize social distancing and to limit group gatherings. *Id.*

In the Eastern District of Missouri, the U.S. Marshals Service has recommended that all pretrial detention facilities follow the BOP's COVID-19 mitigation measures. Area detention facilities have already implemented a number of the recommended measures, including limiting visitors and taking prisoners' temperature prior to court appearances. Additionally, each detention facility has a protocol for responding to the medical issues, including transporting detainees to area hospitals in the unusual event they cannot provide in-facility care.

## Analysis

Defendant argues that two provisions from the Bail Reform Act require the Court to reconsider its detention order and grant [him/her] immediate release on bond.[1] *See* (Doc #776) (citing 18 U.S.C. § 3142(f) & (i)). But neither provision allows for such extraordinary relief. Moreover, if the Court were to grant Defendant's release, it would open the floodgates to similar challenges from the hundreds of pretrial detainees in the Eastern District and quickly overwhelm both the Court and the Pretrial Services Office. Accordingly, the Court should deny Defendant's request for reconsideration and release.

**I.    Defendant's concerns about COVID-19 cannot justify reopening his detention hearing under section 3142(f) because the recent outbreak does not have a "material bearing" on whether he poses a flight risk or a danger to the community.**

Defendant first suggests that 18 U.S.C. § 3142(f) allows the Court to reopen his detention hearing based on "changed circumstances" related to COVID-19. (Doc. #776, page 4). But as this Court recently emphasized, this provision applies only when newly-discovered information has a "material bearing" on whether a defendant poses a flight risk or a danger to the community. *See United States v. Howard*, No. 4:19-cr-00148-ERW, slip op. at 1 n.2 (E.D. Mo. Mar. 24, 2020) (ECF No. 53) (rejecting a similar request to reconsider detention under section 3142(f) because "the Court does not view [the coronavirus pandemic] as alone sufficient to reopen the detention hearing"). Because the spread of the COVID-19 similarly has no impact on this central question here, Defendant has failed to identify a permissible basis for reopening his detention hearing.

---

[1] Defendant also cites a number of cases related the due-process limitations on pretrial detention, but this precedent is inapposite because he does not attempt to justify release on constitutional grounds. Regardless, any constitutional argument would fail for similar reasons set out below. *See Dawson v. Asher*, No. C20-0409JLR-MAT, 2020 WL 1304557, at *2 (W.D. Wash. Mar. 19, 2020) (denying TRO based on claim that "continued detention in the face of the COVID-19 pandemic violates [detainees'] Fifth Amendment right to reasonable safety while in custody".

In relevant part, section 3142(f) allows the Court to reopen a detention hearing if it "finds that information exists that was not known by the movant at the time of the hearing *and that has a material bearing on the issue* whether there are conditions of release that will reasonably assure the appearance of such person as required and the safety of any other person and the community." 18 U.S.C. § 3142(f) (emphasis added). As this Court previously instructed in denying a similar request for reconsideration under the Bail Reform Act, such newly discovered evidence must be "sufficient to overcome the key factors on which the initial order of detention were predicated." *United States v. Rush*, No. S1–4:14 CR 88 RWS(SPM), 2017 WL 6541436, at *3 (E.D. Mo. Dec. 1, 2017). There is no basis for reopening his detention hearing under section 3142(f). *See, e.g.*, *United States v. Jones*, No. 1:17-cr-00582-CCB-2, 2020 WL 1323109, at *1 (D. Md. Mar. 20, 2020) (rejecting claim for release after detainee was exposed to COVID-19 at another detention facility and despite detainee's underlying health conditions including pregnancy because these considerations did not undermine need for detention based on § 3142(g) factors); *United States v. Martin*, No. PWG-19-140-13, 2020 WL 1274857, at *4 (D. Md. Mar. 17, 2020) (denying appeal of detention order on similar grounds).

To be sure, the Bail Reform Act identifies a defendant's "physical and mental condition" as a potential factor in the detention analysis. *See* 18 U.S.C. § 3142(g)(3)(A). However, the Act makes clear that this consideration is relevant only to the extent it impacts the underlying "determin[ation of] whether there are conditions of release that will reasonably assure the appearance of the person as required and the safety of any other person and the community." *Id.* § 3142(g). The limited case law Defendant cites concerning section 3142(f) confirms this reading of the statute. For example, in *United States v. Cordero Caraballo*, the court made clear the defendant's "serious" and "grotesque" gunshot wounds were relevant to the question of pretrial

detention because they rendered him entirely immobile, thereby mitigating the threat he otherwise posed to the community. *See* 185 F. Supp. 2d 143, 145–46 (D.P.R. 2002). Unlike the immobilized defendant in *Cordero Caraballo*, Defendant has not identified a physical or mental condition that has any bearing on the Pretrial Service's prior determination that he poses a flight risk/threat to the community. And even if the Court were to conclude that a defendant's concerns about an infectious disease might qualify as a relevant physical condition under section 3142(f) in some instances, Defendant's claims about COVID-19 are insufficient to justify release from detention for the reasons discussed in the next section. Thus, the Court should deny Defendant's request to reopen his detention hearing under section 3142(f).

## II.    Section 3142(i) permits only the "temporary release" of pretrial detainees, and Defendant has failed to show that this extraordinary relief is necessary for his health or any other compelling reason.

Defendant also argues that the Court can grant his release under section 3142(i). As an initial matter, the motion for reconsideration glazes over the limited nature of this provision, which provides for "temporary release" of pretrial detainees, not the indefinite "release on bond" that Defendant requests. *See United States v. Avanetti*, No. 8:19-cr-00061-JVS, slip op. at 2 (C.D. Cal. Mar. 21, 2020) (ECF No. 121) (emphasizing this distinction in denying motion for reconsideration of bail); *see also Howard*, No. 4:19-cr-00148-ERW, slip op. at 2 (providing similar description of section 3142(i)). Moreover, Defendant does not qualify for even temporary release because his has not met his burden of showing that a release from detention is necessary to protect his health or for any other compelling reason. Thus, section 3142(i) does not provide a basis for reconsidering Defendant's detention or granting even a temporary release.

Section 3142(i) provides that a "judicial officer may . . . permit the temporary release of the person, in the custody of a United States marshal or another appropriate person, to the extent

that the judicial officer determines such release to be necessary for preparation of the person's defense or for another compelling reason."[2] 18 U.S.C. § 3142(i). "A defendant has the burden of showing that temporary release is '*necessary . . .*' under Section 3142(i)." *United States v. Dupree*, 833 F. Supp. 2d 241, 246 (E.D.N.Y. 2011) (emphasis added); *see also United States v. Rebollo-Andino*, 312 F. App'x 346, 348 (1st Cir. 2009) (indicating that "temporary release under section 3142(i)" is warranted only "in extraordinary circumstances"). With respect to health conditions, "[t]his provision has been used sparingly" and only where absolutely necessary because care can no longer be managed by a detention facility. *United States v. Hamilton*, No. 19-CR-54-01 (NGG), 2020 WL 1323036, at *2 (E.D.N.Y. Mar. 20, 2020) (citations omitted).

While the outbreak of COVID-19 has created anxiety for many Americans, Defendant simply has not shown that even a temporary release from detention is necessary for his health. The motion for reconsideration raises only general concerns about coronavirus that apply equally to all pretrial detainees, if not the public at large. *See United States v. Fitzgerald*, No. 2:17-cr-00295-JCM-NJK, 2020 WL 1433932, at *1 (D. Nev. Mar. 24, 2020) ("Defendant's argument applies equally to every detainee in detention; however, the Court cannot release every detainee at risk of contracting COVID-19 because the Court would then be obligated to release every detainee."). "[W]here, as here, the record is devoid of particularized information supporting a finding that a 'compelling' reason exists to release Defendant under 18 U.S.C. § 3142(i), there is no basis to temporarily release Defendant." *Howard*, No. 4:19-cr-00148-ERW, slip op. at 2.

---

[2] Even if detention facilities were to restrict in-person visits, detainees would face no prejudice as this Court already has modified its schedule in light of the coronavirus outbreak and could simply grant a continuance if a detainee were unable to communicate with defense counsel in a timely manner. *See Avanetti*, No. 8:19-cr-00061-JVS, slip op. at 3 ("Notwithstanding any current limitations on attorney visits, there will be an adequate opportunity to prepare once conditions normalize.").

Given that there are a number of confirmed cases in the St. Louis Area, it may well be safer for Defendant to shelter-in-place in the controlled environment at the St. Charles County Jail—consistent with recent measures being implemented by local, state, and national authorities—than seeking release at this uncertain time. *See United States v. Jefferson*, No. CCB-19-487, 2020 WL 1332011, at *1 n.1 (D. Md. Mar. 23, 2020) ("It is not at all clear that [releasing detainee to live with his family] would not pose a health risk to [the detainee] or the community").

Tellingly, Defendant does not offer *any* evidence that his continued detention at the St. Charles County Jail will expose him to significant health risks.  This is plainly insufficient to meet his burden of showing that the extraordinary remedy of release from detention is necessary, particularly considering the preventative measures detention facilities like the St. Charles County jail have taken to mitigate the risks posed by the spread of COVID-19. *See United States v. Gileno*, No. 3:19-cr-161-(VAB)-1, 2020 WL 1307108, at *4 (D. Conn. Mar. 19, 2020) ("With regard to the COVID-19 pandemic, [inmate did] not show[] that the plan proposed by the Bureau of Prisons is inadequate to manage the pandemic . . . or that the facility is specifically unable to adequately treat [him]. . . . [T]he Court cannot assume that the Bureau of Prisons will be unable to manage the outbreak or adequately treat Mr. Gileno should it emerge at his correctional facility . . . ."); *Martin*, 2020 WL 1274857, at *4 ("[W]hile the record confirms that [detainee] suffers from asthma, high blood pressure, and diabetes, this alone is insufficient to rebut the proffer by the Government that the correctional and medical staff . . . are implementing precautionary and monitoring practices sufficient to protect detainees from exposure to the COVID-19 virus.").

While the coronavirus outbreak is new, health claims by detainees are not. Courts have observed that "it is a rare case in which health conditions present an 'exceptional reason'" requiring release where detention is otherwise warranted. *See United States v. Wages*, 271 F. App'x 726,

728 (10th Cir. 2008). These cases also recognize that reasonably necessary treatments are available in prison, and often times, a prison setting will provide superior care than a defendant can obtain on the outside. *See United States v. Rodriguez*, 50 F. Supp. 2d 717, 722 (N.D. Ohio 1999). In this case, Defendant simply has failed to show that his needs will not be met during his detention. Because Defendant has not demonstrated that his release from detention is necessary for his health or any other compelling reason, the Court must reject the motion for reconsideration or release under section 3142(i).

III.    **Releasing pretrial detainees like Defendant would unduly burden the courts, the Pretrial Services Office, and a justice system already under strain from COVID-19.**

Releasing pretrial detainees like the Defendant not only would endanger the community but would impose significant burdens on the justice system, which is already facing other challenges related to the COVID-19 outbreak. For example, detainees who are released would require some form of monitoring by Pretrial Services Office, in addition to the hundreds of defendants in the Eastern District who are already under supervision.[3] *See United States v. Robinson*, No. 4:20CR23 SRC (NAB), slip op. at 3 (E.D. Mo. Mar. 26, 2020) (ECF No. 26) (rejecting request for release in part because "the coronavirus pandemic and the state and national measures that have been put in place in response to it have rendered pretrial supervision more challenging today than when [defendant] was first ordered detained"). Similarly, the Court would be inundated by requests from other detainees seeking pretrial release. *See United States v.*

---

[3] Before a Defendant is placed on release, a Pretrial Services Officer also must vet the proposed residence and meet the proposed third-party custodian and other residents who live there. New release orders would force these Officers to conduct a substantial amount of *in-person*, *in-home* meetings, exposing them to a heightened risk of infection. "Moreover, location monitoring is not a limitless resource, nor is its installation and monitoring by United States Pretrial Services officers without risk to those personnel . . . ." *United States v. Hearns*, No. 1:20-CR-110, 2020 WL 1493747, at *4 (N.D. Ohio Mar. 27, 2020).

*Jackson*, No. 18-216, 2020 WL 1445958, at *2 (W.D. Penn. Mar. 24, 2020) (emphasizing concern that "many other defendants would flood the courts with similar requests"). Countless defendants could make the generic argument, now being raised by Defendant, that they should be released due to fears over the coronavirus outbreak and widespread concerns that pretrial confinement creates the ideal environment for the transmission of contagious disease. Thus, to the extent the Court concludes that the Bail Reform Act allows Defendant to relitigate the issue of detention, it should be mindful of these practical consequences in determining whether to grant Defendant's request for immediate release on bond.

## Conclusion

For the foregoing reasons, the Government respectfully requests that this Court deny Defendant's Motion for Reconsideration of Detention Order and Request for Temporary Release. *See Dawson*, 2020 WL 1304557, at *1; *Gileno*, 2020 WL 1307108, at *4; *Hamilton*, 2020 WL 1323036, at *2; *Howard*, No. 4:19-cr-00148-ERW, slip op. at 2; *Jefferson*, 2020 WL 1332011, at *2; *Jones*, 2020 WL 1323109, at *1; *Martin*, 2020 WL 1274857, at *1; *Robinson*, No. 4:20CR23 SRC (NAB), slip op. at 3.

Respectfully submitted,

JEFFREY B. JENSEN
United States Attorney

 */s/ Angie E. Danis*
ANGIE E. DANIS, #64805MO
Assistant United States Attorney
111 South 10th Street, Room 20.333
St. Louis, Missouri 63102
(314) 539-2200

## CERTIFICATE OF SERVICE

I hereby certify that on April 1, 2020, the foregoing was filed electronically with the Clerk of the Court to be served by operation of the Court's electronic filing system upon all counsel of record.

 */s/ Angie E. Danis*
ANGIE E. DANIS, #64805MO
Assistant United States Attorney